## TERRITORY v. LUNA.

Filed March 1, 1884.

TAXATION—STATUTORY CONSTRUCTION—REPEAL.

The revenue act of 1872 (Prince, St. p. 513, §§ 6, 7) provides for a poll-tax to be "applied to school purposes exclusively." The act of 1874 (Id. p. 515, § 5) provides for its collection by the constable of each precinct, who shall turn it over to the county treasurer. The revenue act of 1882, (Prince, St. 1882, p. 712, § 118,) which embraces all the subjects of taxation, makes the sheriff *ex officio* collector of all taxes, and provides for the distribution of other taxes, but is silent as to the disposition of the poll-tax. The repealing clause repeals all conflicting laws, and further provides that "all laws or parts of laws heretofore in force, regarding the raising of revenue from taxation or from licenses, are by this act hereby repealed." *Held*, that it was not the legislative intent in the act of 1882 to change the disposition of the poll-tax, and that the provision of the act of 1872 devoting it to school purposes is still in force, and that the money should properly be turned over to the county treasurer for the school fund.

Error to the district court of Valencia county.

*McComas & Breeden,* for defendant in error.

*Fiske & Warren,* for plaintiff in error.

BRISTOL, J. This is an action of *assumpsit,* brought by the territory, in the lower court, against Patrocinio Luna, the sheriff and *ex officio* collector of taxes for Valencia county, to recover the sum of $1,000, collected by him as a poll-tax. By consent of the parties a jury was waived and the cause tried by the court. The case was submitted to the lower court for its decision and judgment on the following agreed statement of facts, viz.:

"It is hereby stipulated and agreed, by and between the said parties, that this suit is brought to recover the amount of poll-tax collected by defendant, as sheriff and *ex officio* collector of the county of Valencia, during the years 1882 and 1883; that the amount of such tax, so collected by defendant, is correctly stated in the declaration in this cause; that this cause shall be submitted to the court upon the following statement of facts, for his decision and judgment, with the right of either party to except to said decision and take the same to the supreme court of the territory of New Mexico by appeal or writ of error; that such judgment may be given in vacation, and shall be entered as of the present term and have the same force and effect as though actually entered at this term."

Upon this statement the court found for the plaintiff in the sum of $1,000, and entered judgment accordingly, to which finding and judgment the defendant excepted.

The only question raised is whether this poll-tax should be paid into the territorial treasury or go to the school fund of the county. Counsel for the defendant in error contend that the prior statute, which provided, among its provisions, that the poll-tax should go to the school fund, has been repealed *in toto,* and that, inasmuch as there is no express provision under the present law for the appropriation of this poll-tax, it goes to the territorial treasury by implica-

tion of law, while counsel for plaintiff in error hold the contrary doctrine. The question is one of construction of the statutes on the subject. In 1872 a revenue act was passed which, among other provisions, contained the following:

"All real estate situated in the territory, and all personal property of residents of this territory, wheresoever the same may be, and all other personal property in this territory, on the first day of March of each year, excepting the value of five hundred dollars to each head of a family resident in this territory, * * * shall be subject to an *ad valorem* tax of one per centum upon each dollar of the value thereof, which shall be assessed and collected as is now, or as may hereafter be, provided by law for the assessment and collection of taxes; *one-half thereof to be applied solely and exclusively for territorial purposes, one-fourth in like manner for county purposes, and the remaining one-fourth to be in like manner applied to school purposes in the county where collected.* * * * There shall be assessed upon and collected from every male citizen, above the age of twenty-one years, resident of this territory, idiots and persons of unsound mind excepted, an annual poll-tax of one dollar each, and the tax so collected shall be applied to school purposes exclusively." Prince's St. p. 513, §§ 6, 7.

In 1874 an act was passed, and, among others, contained the following provisions:

"The assessors are hereby required to make out separately a complete list of all persons in each precinct of his county who are liable to pay a capitation tax, which said list shall be delivered to the constable of the corresponding precinct, who is hereby authorized and constituted collector of said capitation tax in his precinct. * * * Said constable shall make, at each term of the probate court, a report of all taxes collected by him, and shall immediately turn over to the county treasurer the same." Id. p. 515, § 5.

In 1876, an act was passed, providing as follows:

"Any person required by law to pay a poll-tax, the full value of whose property shall not exceed three hundred dollars, shall be liable and required to pay for such poll-tax the sum of fifty cents, and no more." Id. p. 524, § 11.

In 1882 a general revenue act was passed embracing all the subjects of taxation, including property tax, real and personal, license taxes, and poll-tax, and providing that the sheriff of each county shall be *ex officio* the collector of all these taxes within his county. It provides for the distribution of the property tax, also of the various license taxes, but is silent as to the disposition of the poll-tax. The repealing section of this act is as follows:

"The provisions of this act shall be in full force and effect from and after its passage, and all laws and parts of laws in conflict herewith are hereby repealed, and all laws and parts of laws heretofore in force *regarding* the raising of revenue from taxation or from licenses are by this act hereby repealed." Prince's St. (1882) p. 712, § 118.

This act provides for the raising and distribution of the property tax as follows:

"There shall be levied and assessed upon the taxable property within this territory in each year the following taxes: For territorial revenue, one-half of one per cent.; for ordinary county revenue, one-fourth of one per cent.; for maintenance and support of public schools, one-fourth of one per cent." Id. p. 688, § 6.

The provision for the distribution of the license taxes is as follows:

"License taxes, one-half of which shall be for territorial and one-half for county purposes, shall be imposed each year as follows." Id. p. 707, § 96.

Then follows an extended list of taxes on a variety of licensed occupations. The act provides for a poll-tax as follows:

"A poll-tax of one dollar shall be assessed against every able-bodied male inhabitant of this territory over the age of twenty-one years, whether a citizen of the United States or an alien, and collected in the same manner as other taxes." Id. p. 712, § 113.

The duty of the sheriff, as *ex officio* collector, in paying over tax moneys collected by him, is provided for in the act as follows:

"On or before the tenth day of each month the collector shall pay to the county treasurer all moneys due the county for taxes and licenses, or otherwise, collected by him for county or school purposes, remaining in his hands on the first day of that month, and to the territorial treasurer all moneys due the territory on any account in his hands on the first day of that month." Id. p. 698, § 56.

There being no provision in this act as to what disposition shall be made of the money collected as a poll-tax, the question arises whether it should be applied to school purposes, under the revenue act of 1872 aforesaid, and paid to the county treasurer, or whether the provisions of that act, that the poll-tax should "be applied to school purposes exclusively," as well as all of its other provisions, was repealed by the aforesaid act of 1882, thus leaving the poll-tax without any express provisions of law as to its disposition; and, in the latter case, whether, by implication merely, it should be paid over to the territorial treasurer, and applied to general territorial purposes. The poll-tax is a part of the system for raising a revenue, and the repealing clause of the act of 1882 repealed all previous laws "regarding the raising of revenue," by a poll-tax as well as by a property and license tax. And it also repeals all prior laws in regard to the distribution of the revenue arising from property and license taxes, since it contains plain and unambiguous provisions as to its disposition; but does it repeal the provisions of the act of 1872 as to the disposition of the poll-tax? In the act of 1876 a modification of the poll-tax was made in regard to persons the value of whose property did not exceed $300; but this could not affect the prior law as to the disposition of the revenue from that source. So the act of 1882 makes a modification of the poll-tax, but such modification alone cannot affect its distribution.

In construing statutes, the legislative intent, if clearly ascertainable, must of course govern; and if uncertain or ambiguous, then the probable intent, as near as it can be ascertained, should control judicial construction. In cases of this kind prior legislative enactments on the same subject, though repealed, are often resorted to in order to determine the probable legislative intent in a doubtful statute of a later date. A case of this kind arose at an early day in Massachu-

setts.  Prior to 1783, the statute of 12 Wm. III. *c.* 7, in regard to devises, was in force as common law.  During that year (1783) the legislature of that state passed an act on the subject of devises containing a repealing clause as follows: "All acts and laws, so far as they relate to the devising any estate, are repealed."  It was doubtful whether the statute of 12 Wm. III. *c.* 7, was within this repealing section, as all the provisions of that statute vest distributive shares in the cases there mentioned, where in fact there was a will; but on reference to the act of 1783, in which was the repealing clause, it was found to be entitled "An act prescribing the manner of devising lands, tenements, and hereditaments," and that it re-enacted the provisions of the statute of 12 Wm. III. *c.* 7, excepting the third section.  It was held that the legislature intended to repeal the statute of William; and as the third section of that statute had not been re-enacted, it was further held that a marriage without issue was no longer as to the widow a revocation of a will made before marriage.  *Church* v. *Crocker*, 3 Mass. 21.  On this subject, in *Eaton* v. *Green*, 39 Mass. 530, 22 Pick. 531, the court said:

"It is a familiar rule of construction where any section or clause of a statute is doubtful, its meaning is to be ascertained, if may be, by taking into consideration the whole statute, and even the preamble, in order to discover the probable intention of the legislature.  *  *  *  The general system of legislation upon the subject-matter may be taken into consideration in order to aid the construction of a statute relating to the same subject; and all statutes *in pari materia, whether they be* repealed or unrepealed, may be considered with the same view."

This doctrine was affirmed in *Holbrook* v. *Bliss*, 91 Mass. 75, and quoted as authority in the late case of *Ex parte Kan-gi-Shun-ca*, 3 Sup. Ct. Rep. 396.

In *Savings Bank* v. *Collector*, 3 Wall. 495, it was decided that in interpreting a section of the statute which remains in force, resort may be had to a proviso in it, though the proviso be repealed.

In the light of these adjudications, there can be no doubt that in the absence of any express provision in the revenue act of 1882, as to the disposition of the revenue arising from the poll-tax, a resort may be had to the act of 1872 to determine the probable intention of the legislature on the subject under the act of 1882.  The fact that in the latter revenue law there are express provisions as to the distribution of the revenue from all sources except the poll-tax, and none in regard to that tax, is a circumstance tending to show there was no intention to change the law as to the application of the poll-tax.  The repealing section of the act of 1882, above quoted, is somewhat peculiar; it contains two repealing clauses; one is, "All laws and parts of laws in conflict herewith are hereby repealed."  If the repealing action ended there, it would have left the provision of the act of 1872, applying the poll-tax to the county school fund, in force, beyond any doubt.  The other and additional repealing clause is as follows: "And all laws and parts of laws heretofore in force regard-

ing the raising of revenue from taxation or from license are by this act repealed." A law is a rule of action prescribed by the legislature. A complicated revenue act like ours, prescribing as it does the modes of assessment, collection, paying over, and the distribution of taxes by the various officers designated by law for the purpose, contains several separate and distinct rules of action; and in that sense the revenue act may be regarded as containing several separate and distinct laws. There is one law for the assessment of the property tax; another for the assessment of the poll-tax; several others for the assessment of the various license taxes; another for the collection of taxes; others for the distribution of the tax moneys; and still others for the payment of the same to the respective county and territorial treasurers. Repealing the laws or rules of action in regard to the various modes of raising revenue, which relate alone to the assessment and collection of taxes, does not of itself necessarily repeal the law or rule of action as to the distribution of the revenue after it has been raised. It is quite clear that before the revenue arising from the poll-tax can be legally paid into the territorial treasury, it must be reasonably certain that by the act of 1882 it was the intention of the legislature, among other things, to change the application of the poll-tax from the county school fund to the territorial treasurer. It is certainly very difficult to arrive at that conclusion from the legislation on the subject. The act of 1872 appropriated the poll-tax, whatever it might be, to the school fund exclusively, and in the plainest and most explicit terms. By that act the policy of the territory on the particular subject was settled. And it is against the rules of statutory construction to consider a change as having been effected from vague implications. All the circumstances and the various provisions of the statutes, *in pari materia*, duly considered, I am of the opinion that there has been no legislative intention to change the law of distribution of the poll-tax, and that so much of the law of 1872 as appropriates the same to the county school fund is still in force.

BELL, J. This case came to the supreme court upon a *pro forma* judgment entered in the court below. The case was not there examined, it being understood that the question had been decided in another district, but that no appeal had been taken from that judgment, and it was desired that the question should be reviewed by this court. After an examination of the authorities in the light of the learned opinion of my associate, Judge BRISTOL, I am fully in accord with the views he expresses. The judgment of the court below should be reversed, and the case sent back, with instructions to enter judgment absolute for the plaintiff.